# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| SUNENERGY1, LLC, KENNEY CHARLES E. HABUL AND KIMBERLY HABUL, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. N14M-12-028 |
| JEFFERY LAWRENCE BROWN, | ) ) | |
| Defendant. | ) ) ) | |

Date Submitted: November 6, 2015
Date Decided: November 30, 2015

## ORDER

### PLAINTIFFS' MOTION TO COMPEL COMPLIANCE WITH AN OUT-OF-STATE SUBPOENA AND NON-PARTY GLASSDOOR'S MOTION TO QUASH

Ryan T. Costa, Esquire, DRINKER BIDDLE AND REATH, LLP, 222 Delaware Avenue, Suite 1410, Wilmington, Delaware, 19801, Attorney for Plaintiffs.

Kathleen St. J. McCormick, Esquire and Elisabeth S. Bradley, Esquire, YOUNG CONAWAY STARGATT AND TAYLOR, LLP, Rodney Square, 1000 North King Street, Wilmington, DE 19801, Attorneys for Glassdoor INC.

**MANNING, Commissioner**

Before the Court is Plaintiffs' motion to compel production of an anonymous internet user's Internet Protocol address (IP address)[1] based on an out-of-state subpoena directed against Glassdoor, Inc., a non-party Delaware corporation. In response, Glassdoor filed a motion to quash, arguing that Plaintiffs' subpoena is overbroad, unduly burdensome, and most critically, infringes upon the anonymous user's First Amendment right to freedom of speech. A hearing before all parties to the motion was held on November 6, 2015. The Court finds the following:

(1) Plaintiffs filed a lawsuit in North Carolina Business Court against defendant, Jeffery L. Brown, on February 17, 2014. Plaintiffs allege that Brown, a former employee and Chief Financial Officer, posted defamatory comments about Plaintiffs' business, SunEnergy1, on the website Glassdoor.com, on December 15, 2013.[2] Glassdoor.com is an employment website (similar to other sites such as Monster.com) where job-seekers can post resumes and employers can advertise vacancies. Glassdoor.com describes itself as a "free jobs and career community that offers the world an inside look at jobs and companies." In addition to a job search feature, Glassdoor.com utilizes a five star rating system for each company based on user input and offers a forum where users can post reviews about the companies listed on the website in an standardized Pros/Cons format.

---

[1] An Internet Protocol address (IP address) is a numerical label assigned to each device (e.g. computer, printer) participating in a computer network that uses the Internet Protocol for communication. This information can be used by the Internet Service Provider (e.g. Verizon, Comcast etc.) to identify the account information of the registered subscriber.

[2] Brown has sworn under oath that he did not author the post in question. Glassdoor's motion to quash at p.3.

(2) On December 15, 2013, the following review of SunEnergy1 was posted on Glassdoor.com by an anonymous author:

**"This is a terrible place to work"**
Anonymous Employee (Former Employee)

I worked at SunEnergy1

**Pros** - There really are none. All of these reviews are true. The Building is nice, Good location in Mooresville, nice landscaping.

**Cons** – Nobody is relaxed and enjoys their job. Any quality professional is going to leave as soon as they find another position. The owners really think they are so much better than anyone, which paradoxically makes them so vulgar. The CEO will yell and pound on his desk when unhappy with someone so loudly that my office walls (down the hall) would shake. This behavior is pretty typical, this is how human resource situations are dealt with at this company or he will start stating lies about you and the other employees will go along with it because they are afraid of becoming a target themselves. This company's culture is one of oppression, untruths, and bullying spearheaded and condoned by the owners. Its pretty appalling to think that a publicly owned utility that gives them all their business would do so when this company treats their employees the way they do, if they are not fair and ethical dealing with their employees I would wonder if the same was true in their business dealings.

**Advice to Senior Management** – Your employees are not your servants, when people get hired by a company typically they agree to work a certain number of hours for a certain wage, they don't want another "family" , they don't want to be forced to have lunch with you, they want to do the work they are supposed to do, and go home to be with their own families. They are not there to serve you, shampoo your carpets, praise your "wife", and act like you are "god" like.

No, I would not recommend this company to a friend – I'm not optimistic about the outlook for this company.

(3) Discovery in a civil case is generally controlled by Superior Court Civil Rule 26.[3] "Parties may seek discovery of any non-privileged, relevant matter, as well as information reasonably calculated to lead to the discovery of admissible information."[4] Rule 26(a)(1)(a)(i) states that the Court shall limit the extent of discovery if it determines that the "discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive . . . ." Most applicable here, Rule 45(c)(3)(A) states that "[o]n timely motion, the Court shall quash or modify a subpoena if it . . . (ii) requires disclosure of privileged information or other protected matter and no exception or waiver applies."

(4) The right to discover the identity of an anonymous author alleged to have made defamatory statements must be balanced against the author's First Amendment right to free speech and to remain anonymous. In the precedential case *Doe v. Cahill*, the Delaware Supreme

---

[3] Rule 26. General provisions governing discovery.

(a) Discovery methods. -- Parties may obtain discovery by one or more of the following methods: Depositions upon oral examination or written questions; written interrogatories; production of documents or things or permission to enter upon land or other property, for inspection and other purposes; physical and mental examinations; and requests for admission.

(b) Discovery scope and limits. -- Unless otherwise limited by order of the Court in accordance with these rules, the scope of discovery is as follows:

(1) In general. -- Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

The frequency or extent of use of the discovery methods set forth in subdivision (a) shall be limited by the Court if it determines that: (i) The discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the discovery is unduly burdensome or expensive, taking into account the needs of the case, the amount in controversy, limitations on the parties' resources, and the importance of the issues at stake in the litigation. The Court may act upon its own initiative after reasonable notice or pursuant to a motion under subdivision (c).

[4] *Huff Fund Inv. P'Ship v. CKX, INC*., 2012 WL 3552687, at *1 (Del. Ch. August 15, 2012).

3

Court held that "[courts] must adopt a standard that appropriately balances one person's right to speak anonymously against another person's right to protect his reputation."[5]

(5) "In Delaware, a defamation claim requires "(1) a defamatory communication; (2) publication; (3) [that] the communication refers to the plaintiff; (4) a third party's understanding of the communication's defamatory character; and (5) injury. However, proof of damages proximately caused by a publication deemed libelous need not be shown in order for a defamed plaintiff to recover nominal or compensatory damages."[6] In this case, the second and third requirements are clearly met and not at issue. The fifth requirement, injury, need not be considered by the Court at this time.

(6) Whether or not a statement is defamatory is a question of law.[7] The threshold issue a reviewing court must address is "first, whether the alleged defamatory statements are expressions of fact, or protected expressions of opinion; and [second], whether the challenged statements are capable of a defamatory meaning."[8] Pure expressions of opinion are protected under the First Amendment.[9] However, "[a]n opinion is not protected and is actionable if it implies the allegation of undisclosed defamatory facts as the basis for the opinion."[10]

(7) In *Cahill*, the Delaware Supreme Court held that "before a defamation plaintiff can obtain the identity of an anonymous defendant through the compulsory discovery process he

---

[5] *Doe v. Cahill*, 884 A.2d 451, 456 (Del. 2005).

[6] *Wallace*, 2013 WL 4054147, at *3(internal quotations and citations omitted).

[7] *Cahill*, 884 A.2d at 463.

[8] *Id*.

[9] *Gertz v. Robert Welch, Inc.,* 418 U.S. 323 (1974).

[10] *Cahill*, 884 A.2d at 462.

must support his defamation claim with facts sufficient to defeat a summary judgment motion."[11] Under this standard, "a defamation plaintiff 'must submit sufficient evidence to establish a *prima facie* case for each essential element of the claim in question.'  In other words, the defamation plaintiff … must introduce evidence creating a genuine issue of material fact for all elements of a defamation claim within the plaintiff's control."[12]

(8)  The summary judgment standard is well-known.  The rule states that summary judgment will only be granted when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.[13]  Additionally, "the moving party bears the burden of establishing the non-existence of a material issue of fact.  If a motion is properly supported, the burden shifts to the non-moving party to establish the existence of material issues of fact.  In considering the motion, the facts must be viewed in the light most favorable to the non-moving party."[14]

(9)  Applied here, *Cahill* requires Plaintiffs to show that their defamation claim can survive a motion for summary judgment before the Court will order production of the anonymous author's IP address.  As this Court previously held in *Wallace v. Geckosystems*, Plaintiffs will be treated as the non-moving party and the Court will view their claims in the light most favorable to them.[15]  Framing it in the context of this case, the question the Court must decide is could any "reasonable person" have interpreted the statements in the December 15,

---

[11] *Id*. at  460.

[12] *Wallace v. Geckosystems*, 2013 WL 4054147, at *2 (Del. Super. July 31, 2013).

[13] Super Ct. Civ. Rule 56(c).

[14] *Wallace*, 2013 WL 4054147, at *3.

[15] *Wallace* at *2 (holding that Wallace, as the Plaintiff in the defamation action, "should be treated as the non-moving party to a summary judgment motion.").

2013 review "as being anything other than an opinion"?[16] If yes, then a material issue of fact exists and summary judgment is not appropriate. If no, then Plaintiffs have not met the summary judgment standard and their motion will be denied. "Because this question is one of law, a judge can just as easily make the determination … [t]he judge will have before him the allegedly defamatory statements and can determine whether they are defamatory based on the words and the context in which they were published."[17]

(10) Before turning to the statements in question, it is necessary to address one other unique aspect of this issue first. Plaintiffs' claim is brought under North Carolina law where they have alleged libel *per se.* Under North Carolina law, libel *per se* is defined as the publication of an "obviously defamatory" statement and to be actionable "must be false and must be communicated to a person or persons other than the person defamed."[18] Plaintiffs' motion argues that the Glassdoor.com posting contained defamatory statements that constitute libel *per se* and therefore they have established a *prima facie* cause of action. Implicit in Plaintiffs' argument is the notion that because their claim is considered libel *per se*, it somehow circumvents the summary judgment pleading standard as outlined in *Cahill*. The Court can locate no North Carolina case addressing the specific issue presented here.[19] Nevertheless, Plaintiffs seek to invoke the power of this Court to compel production of an anonymous author's IP address via a Delaware subpoena. Such an action, in the Court's opinion, implicates the very

---

[16] *Cahill*, 884 A.2d at 467.

[17] *Id*. at 463.

[18] *Daniels v. Metro Magazine Holdings Company L.L.C.*, 634 S.E.2d 586, 590 (N.C. App. 2006) (internal citations omitted).

[19] The closest a North Carolina court has come to addressing the issue presented here appears to have been in *Daniels v. Metro Magazine*. The Court of Appeals of North Carolina upheld the trial court's dismissal of plaintiff's defamation claims under a Rule 12(b)(6) standard. The Court held that statements made were "either (1) expressions of pure opinion not capable of being proven or disproven; or (2) rhetorical hyperbole which no reasonable reader would believe, the statements made [were] protected by the First Amendment . . . ." 634 S.E.2d at 542.

6

same pernicious considerations as expressed by the Court in *Cahill*.[20] These considerations led the *Cahill* Court to set the bar necessarily high before disclosure would be ordered. Accordingly, and despite being pled under North Carolina law, this Court holds that Plaintiffs' claims must still meet the *Cahill* summary judgment standard before the Delaware subpoena will be enforced.

(11) "In *Cahill*, the court emphasized that the context can be 'particularly important' in making the fact/opinion distinction when evaluating statements found in certain types of internet sources."[21] The *Cahill* opinion noted that "[b]logs and chat rooms tend to be vehicles for the expression of opinions; by their very nature, they are not a source of facts or data upon which a reasonable person would rely."[22] Since the *Cahill* opinion in 2005, the internet has evolved considerably. While chat rooms and blogs certainly still exist, user posted reviews and comments are now *de rigueur* on many of the most popular internet sites. Amazon.com, homedepot.com, bestbuy.com, opentable.com and tripadvisor.com—to name just a few— all allow users to post virtually anonymous reviews covering everything from how shoes fit to the quality of the food or service at a restaurant. Similarly, Glassdoor.com allows users to post reviews so prospective job-seekers can get a feel for the company in question and if it is a place where he or she might want to work. The content of the reviews on Glassdoor.com are such that it should be obvious to any reasonable person that the authors (all listed as current or former employees) are using the website as a vehicle to express their personal opinions about the company in question. Additionally, the context in which the comments are posted lends further support to this conclusion. Glassdoor.com is a website for employment and company

---

[20] For example, in *Cahill* the Court noted that "[a]fter obtaining the identity of an anonymous critic through the compulsory discovery process, a defamation plaintiff who either loses on the merits or fails to pursue a lawsuit is still fee to engage in extra-judicial self-help remedies; more bluntly, the plaintiff can simply seek revenge or retribution." 884 A.2d at 457.

[21] *Wallace*, 2013 WL 4054147 at *4.

[22] *Id*.

evaluation—it is not a news website (e.g. WSJ.com or NYT.com) where there is an expectation of objective reporting and journalistic standards. Nor is it a website where a person would go to find detailed factual information about a company such as earnings reports and SEC filings. It is quite evident to the Court that Glassdoor.com is a website where people go to express their personal opinions having worked for a company—not a website where a reasonable person would go looking for objective facts and information about a company.

(12) Finally, the Court will turn to the actual statements in the December 15, 2013 review. First, the title of the review, "This is a terrible place to work," sets the tone for the rest of the review. Words such as "best," "worst" and "terrible" are undeniably subjective assessments. It is readily apparent that the author of this review is unhappy about his or her time at SunEnergy1 and has the proverbial axe to grind—no reasonable person would think otherwise. The fact that the author is a "former employee" who wished to remain anonymous only cements this conclusion.[23] Even when viewed in the light most favorable to Plaintiffs, the content of the review is simply nothing more than a rant by a former employee, citing anecdotal evidence, about why he or she thinks it is a terrible place to work. The author makes no objectively provable factual assertions. For every negative thing the author states, another poster could state the opposite with equal conviction and neither would be a provable fact. Furthermore, the only objective statement that could arguably be taken as a provable fact is whether or not the walls of an office "down the hall" actually shake if a person pounds on the CEO's desk. Even if true, this fact is irrelevant as it is not a defamatory statement about Plaintiffs.

---

[23] Journalists universally tend to sign their name to articles in an effort to lend credibility and allow for fact checking—something wholly absent here.

(13) For the reasons set forth herein, Plaintiffs' motion to compel is DENIED and non-party Glassdoor's motion to quash is GRANTED.

**IT IS SO ORDERED**.

/s/ *Bradley V. Manning*
BRADLEY V. MANNING,
Commissioner

oc:    Prothonotary

9